**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| **REGIONS BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 11-2296-STA** |
| | ) | |
| **ASHIS K. CHANDA,** | ) | |
| **JAYASREE CHANDA,** | ) | |
| **HOLP CONSTRUCTION, INC.,** | ) | |
| **RODNEY DAVID HOLP,** | ) | |
| **SENTINEL INSURANCE COMPANY,** | ) | |
| **THE HARTFORD INSURANCE** | ) | |
| **GROUP d/b/a SENTINEL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION TO**
**COMPEL ARBITRATION**
**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO**
**DISMISS**

---

Before the Court is Plaintiff Regions Bank's Motion to Compel Arbitration (D.E. # 8) filed on April 20, 2011, and Defendants Ashis K. Chanda and Jayasree Chanda's Motion to Dismiss (D.E. # 18) filed on May 4, 2011.  The Court held a hearing on the parties' Motions on August 30, 2011.  For the reasons set forth below, Plaintiff's Motion to Compel is **GRANTED IN PART, DENIED IN PART**.  Defendant's Motion to Dismiss is **GRANTED IN PART, DENIED IN PART.**

1

## BACKGROUND

Defendants Ashis K. Chanda[1] and Jayasree Chanda ("the Chandas") filed suit on January 7, 2011, in the Circuit Court for Tipton County, Tennessee.  The Chandas' Complaint alleged breach of contract, fraud/misrepresentation, wrongful conversion, resulting/constructive trusts, and breach of fiduciary duty against Regions Bank ("Regions"); Holp Construction, Inc.; Rodney David Holp; Sentinel Insurance Company; and the Hartford Insurance Group d/b/a Sentinel Insurance Company.  Among other claims, the Chandas contend that Regions breached its fiduciary duty to them by disbursing insurance proceeds to the Chandas' home contractor without first obtaining the Chandas' consent.  On March 17, 2011, Regions filed its Answer in state court and asserted as its second affirmative defense that the Chandas' claims are subject to arbitration.  On April 19, 2011, Regions then filed the case at bar naming the Chandas and the other parties to the state court suit as Defendants and seeking to compel all parties to binding arbitration.  Regions went on to file the instant Motion to Compel Arbitration.

In its Motion, Regions argues that as account-holders with Regions, the Chandas agreed to resolve claims like the ones the Chandas have alleged in their state court suit through binding arbitration.  According to Regions, the Chandas' maintain accounts with Regions, which are governed by an account agreement containing an arbitration provision.  Regions contends that the Chandas' claims against it and the other parties to the Chandas' state court suit are covered by the terms of the Chandas' arbitration agreement with Regions.  More specifically, Regions relies

---

[1] According to a Notice of Death (D.E. # 32) filed on June 28, 2011, Plaintiff Ashis Chanda died on May 20, 2011.  Thereafter, the Court entered a Consent Order Allowing Substitution of a Party (D.E. # 36) by which the estate of Ashis K. Chanda was substituted as a party in this matter.

on language from paragraph 34 of the Deposit Agreement that took effect on October 26, 2007. That paragraph provided that "you or we agree that either party may elect to resolve by binding arbitration any . . . dispute" including but not limited to "(1) the interpretation, execution, administration, amendment, or modification of the Agreement; (2) any account; . . . (5) any alleged contract or tort arising out of or relating in any way to the Agreement, any account, any transaction, any transaction . . . (6) any breach of any provisions of the Agreement (7) any statements or representations made to you with respect to the Agreement, any account, any transaction, . . . or your business, interaction or relationship with us . . . ."  Based on this language, Regions argues that the Chandas should be compelled to arbitrate all of their claims against Regions.  As for any claims the Chandas have against the other parties or claims the other parties may have against Regions, Regions contends that these claims are also subject to the arbitration provision contained in the Deposit Agreement where the Agreement provides the following: "if [Regions] becomes a party in any lawsuit that you have with any third party, whether through intervention by [Regions] or by motion made by you or any third party, [Regions] may elect to have all claims in the lawsuit between you and such third party to be resolved by binding arbitration under this agreement."  Additionally, Regions moves the Court to enjoin any further action in the Chandas' state court matter pending the outcome of arbitration.

In response to Regions' Motion to Compel, the Chandas have filed a Motion to Dismiss. The Chandas argue that this Court should exercise abstention in this case because parallel litigation is already under way in state court.  Rather than remove the Chandas' state court matter to federal court, Regions made an appearance before the state court, filed a responsive pleading, and asserted arbitration as an affirmative defense.  The state court has jurisdiction to determine

3

whether the Chandas' claims are subject to the arbitration agreement.  As a result, this Court

need not exercise jurisdiction over Regions's Complaint and Motion to Compel.  Should this

Court chose to take jurisdiction over these questions, the Chandas emphasize that not all of their

claims are subject to the Regions arbitration clause.  The escrow account at issue in the state

court case was established by Sentinel Insurance, and not the Chandas, and was unrelated to the

deposit accounts the Chandas hold with Regions.  The Chandas claim that there were no

arbitration provisions in the contract between the Chandas and Holp Construction or in the

escrow agreement between Sentinel and Regions.  Even if these contracts contained an

arbitration agreement, the Chandas never signed such a provision, rendering it unenforceable

pursuant to Tenn. Code Ann. § 29-5-302(a).  The Chandas further argue that Regions's attempt

to enforce the arbitration provisions in their deposit agreements to the escrow account, which the

Chandas did not establish, is unconscionable.  Even assuming that the arbitration provision in the

Chandas' deposit agreements governs their claims against Regions, Regions still cannot compel

parties who were not signatories to the agreement to arbitrate their disputes.  Furthermore,

Tennessee law requires that an arbitration clause in a contract relating to residential property

must be additionally signed or initialed by the parties to the contract.  For all of these reasons, the

Chandas contend that the Court should decline to compel arbitration and should dismiss

Regions's Complaint.

   In response to the Chandas' Motion to Dismiss (and as a reply in support of its Motion to

Compel), Regions has argued that jurisdiction is proper in this Court.  Regions could not have

removed the state court matter here because of the lack of complete diversity in that case.  On the

other hand, Regions has properly filed this matter in federal court pursuant to the Federal

Arbitration Act ("FAA").  As for the Chandas' argument that abstention is appropriate, Regions maintains that this case is not parallel to the Chandas' state court case.  Unlike the case before the Tipton County Circuit Court, Regions has moved this Court to compel arbitration.  Additionally, the balance of the relevant factors weighs against abstention.  The requirements of the Tennessee Uniform Arbitration Act are not relevant because the arbitration clause in the Chandas' deposit agreements stipulates that only the FAA governs.  Finally, Regions argues that compelling the other parties to arbitrate is not unconscionable because the terms of the arbitration agreement applies to the Chandas' claims against the other parties.

## ANALYSIS

### I.    Abstention

As an initial matter, the Chandas have asked the Court to consider abstention in this matter in light of the parallel proceedings they had already initiated in Tipton County Circuit Court.  In *Colorado River*, the Supreme Court explained that a district court may sometimes be justified in abstaining from exercising jurisdiction in deference to a parallel state-court proceeding.  The Supreme Court noted, however, that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule" and that abstention was "justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."[2]  The decision to dismiss a federal action because of a parallel state-court action rests "on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of

---

[2] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

jurisdiction."[3]

The Supreme Court and the Sixth Circuit have identified a number of factors which district courts must consider when determining whether abstention is appropriate under the *Colorado River* doctrine. These factors include:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.[4]

The threshold question in *Colorado River* abstention is whether there are parallel proceedings in state court.[5] The state-court proceedings need not be identical, merely "substantially similar."[6] There is also no requirement that the parties in the state-court proceedings be identical to those in the federal case.[7] The Court finds that the concurrent state and federal actions are actually parallel. Both cases arise out of disputes between the Chandas, Regions, and other parties over the disbursement of insurance proceeds for the reconstruction of the Chandas' home. In both cases, Regions has placed at issue the matter of whether the Chandas' claims are subject to arbitration. It is true that Regions has filed its Motion to Compel

---

[3] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

[4] *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 886 (6 th Cir. 2002) (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001)).

[5] *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984).

[6] *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998).

[7] *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990).

Arbitration only in the federal case; however, Regions has raised the arbitrability of the claims as an affirmative defense in its Answer in the state court proceeding.  Although the cases are not identical, the Court finds that they are substantially similar and thus parallel.

Having concluded that the cases are parallel, the Court holds that the balance of the *Colorado River* factors do not favor abstention.  First, there is no property at issue in the case, and therefore, the first factor weighs against abstention.[8]  Second, the federal forum is not less convenient to the parties: as Regions has noted, this Court and the Tipton County Circuit Court are approximately forty-five miles apart, and counsel for all parties regularly appear before this Court.  Third, the avoidance of piecemeal litigation is not a compelling factor in this case.  For the reasons explained below, the Court holds that the Chandas' claims against Regions are subject to arbitration.  However, the other claims between the parties do not fall within the ambit of the arbitration clause in this case.  Therefore, the Court holds that the piecemeal resolution of the Chandas' claims against Regions and the other parties is unavoidable in this case.  The Sixth Circuit has observed that "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration."[9]  This factor consequently does not favor abstention.

Fourth, the order in which jurisdiction was obtained and the relative progress of the concurrent cases do not favor abstention here.  Although the Chandas filed their Complaint in

---

[8] *Romine*, 160 F.3d at 341.

[9] *Cohen*, 276 F.3d at 203 (citing *Moses H. Cone*, 460 U.S. at 20 where the Supreme Court stated that the possibility of the plaintiff having to resolve its disputes in two forums-one in state court and one in arbitration-where one of the parties to the underlying dispute was not a party to the arbitration agreement, "occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement").

Tipton County Circuit Court almost four months before Regions filed its federal Complaint, the record shows that matters in state court have not progressed to any significant degree.[10]  At the hearing on these Motions, counsel informed the Court that each defendant in the state court case had filed its answer.  Holp Construction has filed a counterclaim and a motion for summary judgment as to the Chandas' claims against Rodney David Holp in his individual capacity.  The parties indicated that discovery had not yet begun and that Regions had filed a motion to stay discovery until this Court had ruled on Regions's Motion to Compel Arbitration.  In contrast, Regions and the Chandas have extensively briefed the arbitration issues here and appeared before this Court to argue the merits of the arbitration clauses in the deposit agreements the Chandas had with Regions.  The Court holds then that these factors weigh against abstention.

Likewise, the fifth factor, whether the source of governing law is state or federal, as well as the eighth factor, whether the federal and state courts have concurrent jurisdiction, also weighs against abstention in this case.  The Court holds that the FAA will govern whether the Chandas' claims are subject to arbitration.  It is true that in its answer in state court, Regions asserted that the Chandas' claims were subject to arbitration both under the FAA and in the alternative to the Tennessee Uniform Arbitration Act.[11]  Upon inspection, though, all of the arbitration clauses at issue in this case state that the FAA governs.  For example, the October 26, 2007 Deposit

---

[10] The Court would simply note that Regions had no reason to seek to compel arbitration until the Chandas had refused to arbitrate and filed suit in state court.  See *Moses H. Cone*, 460 U.S. at 21.

[11] *See* Regions's Answer 9 ("Plaintiffs' claims are subject to an arbitration agreement between the parties, and therefore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and/or the Tennessee Uniform Arbitration Act, Tennessee Code Annotated § 29-5-301, et seq., Plaintiffs' case should be stayed and Plaintiffs should be compelled to arbitrate.").

Agreement states: "If either party elects to arbitrate, the Claim shall be settled by BINDING

ARBITRATION under the Federal Arbitration Act ('FAA')."[12]  The Sixth Circuit has explained,

> Although [the source of governing law] factor is less significant where the state and federal courts have concurrent jurisdiction, the Supreme Court has emphasized that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.[13]

For similar reasons, the Sixth Circuit has held that "the eighth factor is insufficient to justify

abstention despite concurrent jurisdiction in state and federal court where a congressional act

provides the governing law and expresses a preference for federal litigation."[14]  Therefore, the

Court holds that these factors weigh against abstention.

As for the sixth factor, the Court finds that the Chandas' state-court action is adequate to

protect Regions's rights.  Regions has placed the arbitrability of the Chandas' claims at issue

with the Tipton County Circuit Court.  It is undisputed that the FAA is binding on state courts

interpreting contracts effecting interstate commerce.[15]  Therefore, this factor favors abstention.

---

[12] Townsley Decl., ex. 7, ¶ 34 (D.E. # 8-10) ("Regions Deposit Agreement").  *See also* Townsley Decl., ex. 3, p. 6 (D.E. # 8-6) ("Union Planters Deposit Account Agreement") ("This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act."); and ex. 6, p. 11 (D.E. # 8-9) ("Regions Deposit Agreement") ("This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and the Federal Arbitration Act shall apply to construction, interpretation and enforceability of this arbitration provision notwithstanding any other choice of law provision contained in this Agreement.").

[13] *Cohen*, 276 F.3d at 208 (quoting *Moses H. Cone*, 460 U.S. at 25-26) (emphasis in original) (internal quotation marks omitted).

[14] *Id.* at 208-209.

[15] *Id.* (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)).

The Court concludes that the balance of the abstention factors clearly weighs against abstention in this case.  The only factor that favored abstention, the adequacy of the state court to protect Regions' rights, is not the kind of exceptional circumstance "necessary to justify abandoning the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."[16]  Therefore, the Court declines to abstain in this case and will accept jurisdiction over Regions' claim that the parties should be compelled to arbitrate.

## II.    Arbitration

When parties to a lawsuit have entered a valid arbitration agreement, the proper procedure is for the court to compel arbitration and stay the proceedings while arbitration occurs.[17]  The FAA was enacted with the purpose "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts."[18]  When a party files a motion to compel arbitration, the court "must follow the procedure set forth in section 4 of the FAA."[19]  Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed . . . .  [U]pon being

---

[16] *Id.* at 209 (quoting *Colorado River Water Conservation Dist.,* 424 U.S. at 817, 818, 96 S.Ct. 1236).

[17] *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing 9 U.S.C. § 2).

[18] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d. 892 (Tenn. 2006).

[19] *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003).

satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration . . . .[20]

Under the FAA, the Court has four tasks when examining an arbitration agreement.[21]  First, it must determine whether the parties have agreed to arbitrate.[22]   Second, it must determine the scope of the agreement.[23]  Third, where federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable.[24]  Finally, if the Court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.[25]

Once the court finds the parties have so agreed, the court does not have the discretion to refuse to compel arbitration.[26]  Furthermore, courts must read a limitation of an arbitration provision narrowly to effectuate the strong policy of favoring enforcement of arbitration agreements, resolving any doubts in favor of arbitration.[27]  In other words, the court should order

---

[20] 9 U.S.C. § 4; *Simons*, 288 F.3d at 889.

[21] *See Fazio*, 340 F.3d at 392 (citing *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000)).

[22] *Id.*

[23] *Id.*

[24] *Id.*  This factor is not relevant in this case.

[25] *Id.*

[26] *Terry v. Labor Ready, Inc.*, No. 02-1035, 2002 WL 1477213, at *1 (W.D. Tenn. July 2, 2002) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) .

[27] *Id.* (citing *Moses H. Cone*, 460 U.S. 1, 24-25;and *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155 (6th Cir. 1983)).

arbitration unless the arbitration clause cannot be interpreted to cover the asserted dispute.[28]  The party opposing arbitration carries the burden of proving that the claims at issue are unsuitable for arbitration.[29] Additionally, if the court is satisfied that the parties entered into a written agreement to arbitrate the issue(s) in the lawsuit, it is required to stay the proceedings.[30]

Regions has argued that three distinct sets of claims are arbitrable: (1) the claims between the Chandas and Regions; (2) the claims between the Chandas and Holp Construction/Rodney David Holp, and Sentinel Insurance; and (3) the claims between Holp Construction/Rodney David Holp and Sentinel Insurance and Regions.  The Court will analyze the arbitrability of each group of claims separately.

## A.      Claims Between the Chandas and Regions

The Court holds that the claims between the Chandas and Regions are subject to a binding arbitration agreement.  As a threshold matter, the Court holds that the Chandas and Regions entered into an agreement to arbitrate.  In support of its Motion, Regions has produced three different deposit agreements.  Each agreement has governed the Chandas accounts with Regions at various times.  The first applied to the accounts the Chandas originally opened with

---

[28] *Id.* (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); and *McMahan Sec. Co. v. Forum Capital Mkts.*, 35 F.3d 82, 88 (2nd Cir. 1994)). *See also Fazio*, 340 F.3d at 392.

[29] *See Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 91 (2000); *Morrison v. Circuit City Stores*, 317 F.3d 646, 659 (6th Cir. 2003).

[30] *Terry*, 2002 WL 1477213, at *1 (citing  9 U.S.C. § 3).

Union Planters Bank, N.A., in July 2000.[31]  Union Planters Corporation later merged with

Regions Financial Corporation on July 1, 2004, and Union Planters Bank, N.A. with Regions

Bank on June 29, 2005.  Upon the merger of Union Planters and Regions, a second deposit

agreement went into effect.[32]  In fact, the Chandas opened another account with Union

Planters/Regions on July 22, 2005, which was governed by the second agreement.  Regions

subsequently merged with AmSouth Bank through which the Regions and AmSouth banking

networks in Louisiana, Mississippi, and Tennessee were combined under the Regions name on

October 26, 2007.  At that time, yet another deposit agreement took effect and governed the

Chanda's accounts with Regions.[33]

Although Regions has produced all three agreements in support of its Motion, the Court

finds that the most recent Deposit Agreement, which took effect on October 26, 2007, and was in

effect at all times relevant to the Chandas' claims against Regions, is the controlling agreement.[34]

At the motion hearing, the Chandas argued that the October 2007 Agreement did not control

because the Agreement was mailed under a cover letter addressed "To our new customer."

---

[31] *See* Townsley Decl., ex. 3 (D.E. # 8-6) ("Union Planters Deposit Acount Agreement").
("This Arbitration Provision is made pursuant to a transaction involving interstate commerce,
and shall be governed by the Federal Arbitration Act."); and ex. 6, p. 11 (D.E. # 8-9) ("Regions
Deposit Agreement") ("This Arbitration Provision is made pursuant to a transaction involving
interstate commerce, and the Federal Arbitration Act shall apply to construction, interpretation
and enforceability of this arbitration provision notwithstanding any other choice of law provision
contained in this Agreement.").

[32] Townsley Decl., ex. 6, p. 11 (D.E. # 8-9) ("Regions Deposit Agreement").

[33] Townsley Decl., ex. 7, ¶ 34 (D.E. # 8-10) ("Regions Deposit Agreement").

[34] There is no evidence about when the escrow account at issue was established or when
Regions disbursed funds from the account.  According to the Chandas' state court pleadings, the
fire that damaged their home occurred on February 22, 2008.  Mot. Dismiss, ex. A, ¶ 8.

13

Because the Chandas were not new customers, they assert that the Agreement did not govern

their existing accounts.  The Court finds this argument to be without merit.  The letter announced

the merger between Regions and AmSouth and stated, "Also be sure to review the enclosed

Consumer Disclosure Booklet for the terms and conditions that will apply to your Louisiana,

Mississippi, and Tennessee accounts as of October 26[,2007]."  This statement plainly implies

that the new terms and conditions were applicable to accounts existing prior to the merger like

the ones the Chandas held with Regions.  The Consumer Disclosure Booklet included a Deposit

Agreement that was to take effect on October 26, 2007.  The Deposit Agreement in turn provided

that an account holder would "agree to the terms of this Agreement, as amended" by any number

of acts including "by depositing funds into, or withdrawing funds from, any account" or simply

by receiving a copy of the Agreement by any means.  This term further supports the view that the

October 2007 Agreement would apply to existing accounts like the Chandas' accounts, and not

just the account of a "new customer."  The Agreement also disclosed that it contained an

arbitration provision and stated that "[y]our acceptance of this agreement includes your

acceptance of and agreement to such provisions."  The Agreement also provided that any claims

would be subject to the FAA.[35]  The Chandas have not shown that they closed their accounts or

took any act to reject the terms and conditions of the new Agreement.  Therefore, the Court

concludes that the Chandas accepted the terms and conditions of the Agreement, including the

arbitration clause.

---

[35] For this reason, the Chandas' argument about the signing requirement of the Tennessee Uniform Arbitration Act found at Tenn. Code Ann. § 29-5-302(a) is inapposite.  *See Rotello v. Clayton Homes of Delaware, Inc.*, No3:03-cv-573, 2005 WL 3987375, at *9 (E.D. Tenn. Nov. 29, 2005) (holding that the Tennessee Act did not apply to an arbitration agreement "because it was not properly specified by the parties as the governing statute").

Construing the arbitration clause contained in the October 26, 2007 Deposit Agreement, the Court holds that any claims between the Chandas and Regions are subject to arbitration. The arbitration language reads

> Any **BINDING ARBITRATION** provisions set forth in this Agreement also apply to any account, contract, loan, transaction, business, contact, interaction or relationship you may have or have had from time to time with us. Further, as used in, or in relation to, or in provisions set forth in this Agreement as it relates or applies to **BINDING ARBITRATION** provisions set forth in this Agreement, the term "account" shall also include any account or other business relationship of any nature whatsoever you may hold or have held from time to time with any of us.[36]

The Chandas' claims against Regions relate to an escrow account established by Sentinel Insurance from which funds for the reconstruction of the Chandas' home were to be disbursed. The Court finds that the arbitration clause's application to any "transaction, business, contact, interaction or relationship you may have or have had from time to time with" Regions is so broad as to include the escrow account at issue in this case. Even the arbitration clause's definition of "account" to include any "other business relationship of any nature whatsoever you may hold or have held from time to time with" Regions would appear to apply to the escrow account.[37]

The Court further holds that the arbitration clause, expansive as it is, captures the Chandas' claims against Regions. The Chandas have alleged the following causes of action

---

[36] Townsley Decl., ex. 7, 4 (bold and capitalization in original).

[37] The Court would add that elsewhere the Agreement defines "account" to mean "any and all deposit accounts you have or have had from time to time with Regions Bank, by whatever name or description, including but not limited to, checking accounts, savings accounts, money market deposit accounts, time deposit accounts, and certificates of deposit." *Id.* There is no evidence that the escrow account at issue met this narrower definition of "account." However, the Court need not consider the issue because the definition of "account" for purposes of the arbitration clause is much broader.

sounding in tort against Regions: (1) fraudulent misrepresentation in so far as Regions

misrepresented that it would not disburse the funds held in the escrow account without the

Chandas' authorization;[38] (2) conversion;[39] and (3) breach of fiduciary duty.[40]  The Agreement

sets forth the scope of the arbitration clause, stating

> either party may elect to resolve by BINDING ARBITRATION . . . any controversy,
> claim, counterclaim, dispute or disagreement arising out of, in connection with or relating
> to any one or more of the following: . . . (5) any alleged contract or tort arising out of or
> relating in any way to the Agreement, any account, any transaction . . . or your business,
> interaction or relationship with us; . . . (7) any statements or representations made to you
> with respect to the Agreement, any account, any transaction . . . or your business,
> interaction or relationship with us; or (8) any of the foregoing arising out of, in
> connection with or relating to any agreement which relates to the Agreement, any
> account, any transaction or your business, interaction or relationship with us."[41]

The Court concludes that the arbitration clause make the Chandas' tort claims subject to

arbitration.  Specifically, the arbitration clause at subparagraph (5) governs "any alleged contract

or tort arising out of or relating in any way to . . .any transaction . . . or your business, interaction

or relationship with us" and at subparagraph (7) applies to "any statements or representations

made to you with respect to . . . any transaction . . . or your business, interaction or relationship

with us."  Therefore, the Chandas claims against Regions fall within the scope of the arbitration

clause the Chandas accepted in the October 26, 2007 Deposit Agreement.  Accordingly,

Regions's Motion to Compel Arbitration of these claims is **GRANTED**, and the Chandas'

---

[38] Mot. Dismiss, ex. A, ¶ 63.

[39] *Id.* ¶ 66.

[40] *Id.* ¶ 72.

[41] Townsley Decl., ex. 7, ¶ 34 (capitalization in original).

16

Motion to Dismiss is **DENIED** as to these claims.

**B.**     **Claims Between the Chandas and Holp Construction/Rodney David Holp and Sentinel Insurance**

As for the claims the Chandas have against the other parties to this case, the Court holds that these claims are not subject to arbitration. Regions has argued that the following language from the arbitration clause applies to the Chandas' claims against Holp Construction/Rodney David Holp and Sentinel Insurance as well as any claims those parties might have against Regions: "In addition, if we become a party in any lawsuit that you have with any third party, whether through intervention by us or by motion made by you or any third party, we may elect to have all claims in that lawsuit between you and such third party to be resolved by BINDING ARBITRATION under this agreement."[42] The Court's initial task in considering whether to compel arbitraion is to determine whether the Chandas and these third parties had agreed to arbitrate their claims. Based on the record before the Court, there is no evidence that these parties had such an agreement. Without deciding whether the Deposit Agreement covers the Chandas' claims against the other parties, the Court holds that Regions cannot use the Chandas' acceptance of arbitration to compel non-parties to the contract to arbitrate. The Sixth Circuit has explained that "[a]rbitration under the Federal Arbitration Act is 'a matter of consent, not coercion'"[43] and that "no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a

---

[42] *Id.* ¶ 34 (capitalization in original).

[43] *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989)).

dispute which it has not agreed to submit to arbitration."[44]  It is true that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles."[45]  The Sixth Circuit has recognized five legal theories, which may bind nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel.[46]  Regions has not demonstrated how any of these theories would apply to Holp Construction/Rodney David Holp or Sentinel Insurance.  The Court holds that the claims between the Chandas and these parties are not covered by the arbitration clause in the Deposit Agreement.  Therefore, Regions's Motion to Compel Arbitration as to these claims is **DENIED**, and the Chandas' Motion to Dismiss is **GRANTED** as to these claims.

**C.**    **Claims Between Holp Construction/Rodney David Holp and Sentinel Insurance and Regions**

For the same reasons, the Court holds that any claims between Holp Construction/Rodney David Holp and Sentinel Insurance and Regions are not arbitrable.  In the first instance, none of these parties have actually asserted claims against each other in the state-court proceedings.  Even if these parties had asserted claims against each other, there is no evidence of an agreement to arbitrate between any of these parties.  Likewise, there is no showing that Holp Construction/Rodney David Holp and Sentinel Insurance as non-parties to the Deposit Agreement should be bound to arbitrate their claims.  Because these claims are also not subject to arbitration, Regions's Motion to Compel Arbitration as to these claims is **DENIED**, and the

---

[44] *Id.* (quoting *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005)).

[45] *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citation omitted).

[46] *Id.* (citing *Thomson-CSF v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995)).

18

Chandas' Motion to Dismiss is **GRANTED** as to these claims.

**D.      Stay of the Proceedings**

Regions has further requested that the Court enter a stay of the state court proceedings should this Court grant the Motion to Compel Arbitration.  The FAA requires a court to stay its own proceedings where the issues to be litigated are subject to an agreement to arbitrate.[47]  Here, the gravamen of Region's federal Complaint was to compel arbitration.  The Court has granted in part and denied in part Regions's Motion to Compel.  Therefore, further proceedings in the federal matter are stayed pursuant to 9 U.S.C. § 3.

As for Regions's request that the Court stay the proceedings before the Tipton County Circuit Court, the stay is granted only in part.  The Sixth Circuit has held that the FAA "does not specifically authorize federal courts to stay proceedings pending in state courts."[48]  This Court's "authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act" found at 28 U.S.C. § 2283.[49]  The Sixth Circuit in *Simons* construed the Anti-Injunction Act to permit a district court to stay concurrent state-court proceedings after compelling parties to arbitrate and entering its own judgment in the federal matter.[50]  According to *Simons*, where the state-court matter involves the same underlying dispute, including relitigation of an arbitration clause's validity, "[a]n injunction of the state

---

[47] 9 U.S.C. § 3.

[48] *Simons*, 288 F.3d at 893 (quoting *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1180 (11th Cir. 1981)).

[49] *Id.*

[50] *Id.*

proceedings is necessary to protect the final judgment of the district court on this issue."[51] Applying this reasoning to the case at bar, the Court holds that only a stay enjoining the relitigation of the arbitration clause's validity before the state court is necessary to protect the judgment of this Court. The Court has granted in part and denied in part the parties' Motions, thereby resolving the arbitration issue. As a result, a stay enjoining the relitigation of the arbitration issue is warranted and the stay of the proceedings as to that issue only is **GRANTED**.

However, this Court has further held that not all of the claims in the concurrent proceedings are subject to arbitration. The Court finds that a stay of the state court's consideration of the non-arbitrable claims would not protect this Court's final judgment on the arbitration issue and therefore would not be appropriate. To the extent that Regions has requested a stay of the proceedings as to any non-arbitrable claims in state court, that request is **DENIED**. Therefore, Regions's request for a stay of the state-court proceedings is **GRANTED IN PART, DENIED IN PART**.

## CONCLUSION

Any claims between the Chandas and Regions are subject to arbitration pursuant to the October 2007 Deposit Agreement. The Chandas' claims against Holp Construction/Rodney David Holp and Sentinel Insurance are not subject to arbitration because those parties did not have a binding agreement to arbitrate. For the same reasons, any claims between Holp Construction/Rodney David Holp and Sentinel Insurance and Regions, even if these parties had pled such claims in state court, are not arbitrable. Therefore, Regions's Motion to Compel

---

[51] *Id.* (citations omitted).

20

Arbitration is **GRANTED IN PART, DENIED IN PART**, and the Chanda's Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**.

This matter is hereby **STAYED** and will be administratively closed, pending the outcome of the arbitration proceedings.  In order to protect this Court's judgment, a stay of the state court proceedings on the arbitration issue is **GRANTED** pursuant to the Anti-Injunction Act.  This stay has no effect, however, on the state-court proceedings on all non-arbitrable issues.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 16, 2011.